Ruffin, C. J.
 

 We think the act of 1806 does not alter the rule of evidence before applicable to such cases ; and therefore, that the evidence here was properly rejected. In this very case it has heretofore been decided, that parol gifts are alone within the purview of the proviso to the act of 1806-5 Ired. 78. Therefore it was competent for the plaintiff to prove that the negroes were lent and not given. The question is, by what sort of evidence may the plaintiff establish the fact, that the defendant received them on those terms ? Evidence to the fact of the loan at the time the negroes were delivered, or the declarations of the defendant at any time, or those of the parent, immediately, or a week or two proceeding the transfer of the possession, of the intention to lend the negroes,
 
 Moore
 
 v.
 
 Gwyn,
 
 4 Ired. 275, are competent and relevant to that point. But it seems us, that it would be against principle and dangerous to admit the declarations of the parent made after he had parted with the possession, and in the absence of the child and never communicated to the child, as evidence of the fact of the loan, contrary to the rational and legal presumption of a gift. For, at common law, a gift of a slave was inferred, if the father put it into the possession of the child upon coming of age or marrying, unless upon distinct proof to the contrary. As a gift was presumed, the parent could not recover the slave in an action against the child. It follows, that he could not give himself or his executor an action by a declaration, not assented to "by the child, that he never had given, but had only lent; the negro. But it is very ingeniously put by the counsel for the plaintiff, that under the act of 1806, the most positive parol gift is but a bailment at the will of the parent and may be terminated at his pleasure, during life, by recovering the possession, or at his death, by leaving a
 
 *428
 
 will; and therefore that, after delivering the possession to the child, the parent has a continuing interest, on which his declaration may operate and ought to operate, since he could have no motive to make an untrue one. The distinction would be a sound one, if there were any thing in the statute, which allowed the parent to terminate his parol gift by declaration or by any thing short of changing the possession or disposing of the slave by a sale or conveyance to some one else, or by a bequest; for, before the act, the subsequent declaration of the parent was excluded, because the presumptive gift was a total alienation and conclusive upon him ; and it is not so to every purpose since the act, but the parent may treat the gift as null in either of the ways mentioned, that is by an express bailment or by taking or disposing of the slave. His creditors may also, no doubt, treat the slaves as the parent’s. But we do not think, it was the intention of the act, that the right of the child should be defeated in any other way. For, if there be an express gift to the child, or one implied from the delivery without any thing being said, then the act makes it a gift from the beginning, as it was before the act, provided only the possession continues with the child until the death of the parent, intestate. To use the language of Judge Hbndeeson, the legislature not only withdrew the case within the proviso from the operation of the act, but validated and made it a good gift.
 
 Stallings
 
 v.
 
 Stallings,
 
 1 Dev. Equity, 298. It is the same as if the act had never passed ; and the gifts are made effectual from the time of the first delivery, and are to be accounted for as advancements at that time.. Then, plainly, upon principle, evidence of subsequent oral declaration of the parent ought not to be admitted to divest the presumptive title of the child, at least, unless made to the child. For the means, whereby, according to the terms of the statute, the parent may ter. rainate the inchoate gift to the child, are open and solemn
 
 *429
 
 acts, done either to the child or in such manner as to put their existence and purpose beyond dispute and without much danger of fraud and perjury ; namely, the demanding or resuming possession, or a disposition by sale or will. Hence Judge Henderson reasoned, that the circumstances stated in the proviso are, in the estimation of the legislature, evidence equal to that of the writing required in the first section to make a valid gift, and that the mischiefs intended to be prevented by the first section, that is, the setting up of spurious gifts by perjury and misconception would not arise in the case excepted by the proviso. That is true, for there can be scarcely a possibility for falsehood or mistake to go undetected, in setting up a parol gift under the circumstances mentioned in the proviso, as the possession is in its nature notorious, the presumption of a gift from it natural, and that presumption fortified, so as to become almost an absolute certainty, by the failure of the parent to make any other disposition during his life. But while fraud or misapprehensions are thus avoided in setting up gifts to children, a wide door will be opened to attempts to defeat even such as are within the words and meaning of the proviso, by setting up spurious loans upon the testimony of false or mistaken witnesses as to the secret declarations of the parent. The reception of such evidence would indirectly introduce many of the mischiefs the statute was intended to prevent. There is a plain difference between such private declarations, almost to be called mental reservations, and those made distinctly to the child, or the ac-knowledgements of the child. For the child, although he knows the parent may revoke his gift, or that the creditors may repeal it, expects on just grounds, that such will not be the case, and therefore he is willing to accept the slaves and be at the expense, perhaps, of rearing a family from them with the view to the ultimate completion of his title as from the beginning, either by the intestacy of the parent or by a donation in his will. But it might
 
 *430
 
 be far otherwise, if the child were informed by the parent, that he had not given and did not intend to make a gift, but only a loan ; for, then, he might be altogether unwilling to retain the slaves and rear others for other members of the family. It would be an act of plain imposition practised on the child by a parent, who would thus deal with him ; but it would, probably, oftener bean act of injustice to the child and to the
 
 memory of the
 
 deceased parent, in his representatives’ setting up, by false evidence of the dead man’s declarations in secret, the pretence of a loan, where the parent had intended a gift, as proved by the enjoyment, which he allowed the child to have (as here) for twent}r years under the expectation and belief, that he was to have the absolute property, and without any intimation to the child of the contrary in the parent’s life time or at his death. Hence, the conclusion before stated seems to us to be the proper one ; that, as, by the proviso of the act, the case óf a parol gift is taken out of the enacting clause, when the possession of the slave accompanies the gift, and the parent dies intestate, so as to make the gift good in itself, and from the time of the possession acquired, as it was before the act passed, so no posterior declarations merely by the parent of a loan can be received now to defeat the operation of the proviso, by setting up' a,> loan instead of a gift, more than they could before the act of 1806. Therefore the judgment must be affirmed;.
 

 Per Curiam. ‘ • Judgment affirmed.